[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 861 
On November 7, 1985, appellant John Andrew Parker was found guilty of the forcible gang rape of a 14-year-old girl. The appellant was sentenced to life without parole pursuant to the requirements of the Habitual Felony Offender Act. He raises eight issues on appeal.
A little after 10:00 p.m. on April 15, 1985, the victim, a 14-year-old girl, was outside Michele's Club with her sister. One of the appellant's co-defendants began talking to her. Soon the appellant, a 27-year-old man, and the other co-defendants came out of the club. The five men asked the victim if she wanted to ride with them to a store. She accepted and got into the back of the two-door car with the men. She sat in the back seat between two men while the other three sat in the front seat. As soon as they left, one of the men in the front seat turned, held up a knife and told the victim, "You better act right." The victim tried to get out of the car one of the men in the back seat blocked her exit with his leg. After stopping at a gas station to purchase beer, they went to a house in Southlawn in Montgomery County. All five men and the victim went inside the house. One of the men took the victim to a back bedroom and locked the door. He requested that she have sexual intercourse with him and she refused. One of the other men said if the victim would unlock the door they would help her. She unlocked the door and three of the men entered clad only in underwear. They then pulled her clothes off as she resisted by kicking and screaming. They held her arms and legs. The men then had sex with her, with the appellant being the second to do so. The appellant got back on top of the victim after the third man. She continued to yell and scream and one of the men threatened to hit her with a hammer. The men thought someone arrived at the house and gave her back her clothes and then all of them left the house. They told her they would take her home and she got in the car. One of the men then made comments about oral sex and she jumped out of the car and ran to the house next door. She hid behind some bushes in order to avoid the men in the car. A woman opened the door and let the victim into the house. She telephoned the girl's two sisters, who took her to Jackson Hospital where a rape exam was performed.
 I
The appellant asserts that the evidence in his case was insufficient to support a conviction of first degree rape and that such verdict was against the great weight of the evidence. He states that since he was suffering from an outbreak of a sexually transmitted disease, herpes, sexual intercourse would have been painful and virtually impossible for him. He further argues that since his disease was in the active stage, it would be expected that the victim would have contracted the disease had he raped her. The fact that she did not contract herpes, he argues, is evidence in his favor. He further emphasizes that the evidence shows that the hair and semen samples taken after the gang rape did not match his. Appellant Parker also points out that he had a witness to testify that he was somewhere else at the time of the crime. *Page 862 
Rape in the first degree is defined in § 13A-6-61, Code of Alabama 1975, as follows:
 "(a) A male commits the crime of rape in the first degree if:
 "(1) He engages in sexual intercourse with a female by forcible compulsion; or
 "(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
 "(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old.
 "(b) Rape in the first degree is a Class A felony."
The state put forth evidence as to every element of the offense. There was evidence on which the jury might have based their conclusions. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Within these parameters, we are to review the evidence in the light most favorable to the prosecution. Id.
As to appellant's assertion that he was incapable of performing sexual intercourse, the testimony proffered deals with probabilities and not absolutes. The chances were that the victim would more than likely have contracted herpes, not that she inevitably would have caught the disease. The expert testimony was that the outbreak of herpes did not make it impossible for the appellant to commit the act. Additionally, the absence of semen or hair samples does not necessarily prove that sexual intercourse did not take place. "Whether or not appellant climaxed is immaterial. Emission is not an element of the offense of rape." Thomas v. State, 403 So.2d 323, 325
(Ala.Cr.App. 1981). Where there is evidence of lack of intercourse, as well as evidence of guilt, it is for the jury to sort out the evidence and give it just such weight as they believe it deserves. We will not substitute our decision for that of the jury. Gossett v. State, 451 So.2d 437 (Ala.Cr.App. 1984); Barnes v. State, 445 So.2d 995 (Ala.Cr.App. 1984);Atwell v. State, 432 So.2d 22 (Ala.Cr.App. 1983).
 "Conflicting evidence should be reconciled by the jury, if possible, and if they cannot reconcile it they may base their verdict on that part of the testimony which they consider worthy of credit, and reject that which they deem to be unworthy of belief. . . . Arnold v. State, 33 Ala. App. 146, 147, 30 So.2d 587 (1947)."
Jones v. State, 469 So.2d 713, 717 (Ala.Cr.App. 1985).
As the statutory requirements were met, we find that the evidence was sufficient to sustain appellant's conviction for first degree rape.
 II
Again, the appellant contends that the evidence presented by the prosecution was insufficient to sustain the conviction for rape in the first degree because two of his co-defendants were charged with first degree rape, yet the jury convicted them of second degree rape and another pleaded guilty to second degree rape. The appellant asserts that since his co-defendants' convictions were based on the same facts, he should have been convicted, at most, for second degree rape. This argument is without merit. Appellant cites no cases in support of his position. It is not the law, nor is it reasonable, that a jury should be bound in their determination of guilt or innocence by verdicts of other juries in trials of co-defendants. Different juries reviewing the same set of facts may reasonably reach opposite results. Lewis v. Moss, 347 So.2d 91 (Ala. 1977). Appellant's argument ignores the fact that there can be different degrees of culpability among co-defendants. Further, the same person telling of the same event is not likely to use identical language each time he testifies. Still further, the jury may have understood the testimony a little differently.
 III
The appellant also asserts that the charge of first degree rape against him should have been reduced to second degree rape on the basis of collateral estoppel or res judicata. Appellant claims that the jury verdict in the trial of his co-defendants *Page 863 
was a final judgment against him. Appellant urges that since the jury in the co-defendants' cases did not find forcible compulsion, his jury should be precluded from reaching such a verdict because that issue had already been determined.
Once an issue of ultimate fact has been determined by a valid and final judgment, collateral estoppel bars relitigation by the same parties in a future lawsuit. Ashe v. Swenson,397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); Pooley v.State, 470 So.2d 1337 (Ala.Cr.App. 1985); Morris v. State,465 So.2d 1173, reversed, 465 So.2d 1180, on remand, 465 So.2d 1185
(Ala.Cr.App. 1984). The doctrines of collateral estoppel and res judicata are applicable to criminal cases as well as civil cases. Quinnelly v. City of Prichard, 292 Ala. 178,291 So.2d 295 (1974).
While the issues, including that of forcible compulsion, concerning the rape of the young girl were considered by the juries trying the two co-defendants, juries judging other people did not consider these issues as they related to this defendant. For the doctrine of collateral estoppel to apply, the issue would have to have been previously decided between the appellant and the state. It was not. Previous determinations were between the state and appellant's co-defendants and judged their actions, not his. Therefore, neither the issue nor the parties were the same.
 IV
The appellant contends that the prosecution failed to prove that the defendant had previously been convicted of three felonies for the purposes of the Habitual Felony Offender Act, § 13A-5-9, Code of Alabama 1975. The appellant argues that his prior adjudication of guilt in Elmore County for burglary/grand larceny constituted only one conviction, not two. He does not contest his prior conviction in Montgomery County for theft.
"Burglary" is defined in Title 14, § 85, Code of Alabama 1940 (recompiled 1958):
 "Any person who in the daytime, with intent to steal or to commit a felony, breaks into and enters any inhabited dwelling house or any other house or building which is occupied by any person lodged therein, or any person who either in the nighttime or daytime, with intent to steal or to commit a felony, breaks into and enters any uninhabited dwelling house, or any building, structure or enclosure . . . is guilty of burglary in the second degree and shall on conviction be imprisoned in the penitentiary for not less than one year, nor more than ten years."
"Grand larceny" is defined in Title 14, § 331, Code of Alabama 1940 (recompiled 1958), as amended effective 1962:
 "Any person who steals any horse, mare, gelding, colt, filly, mule, jack, jennet, or any part of any outstanding crop of corn or cotton of the value of five dollars or more and any person who steals any personal property of the value of five dollars or more from the person of another, or from or in any building on fire or which was removed in consequence of an alarm of fire, or from or in any dwelling house, or from or in any storehouse, warehouse, shop, office, church, school house, or any public building, railroad car, steamboat, ship, vessel, or boat used for carrying freight or passengers; and any person who steals any personal property, except any cow or animal of the cow kind, other than hereinbefore enumerated of the value of twenty-five dollars, or more, and any person who knowingly, wilfully and without the consent of the owner thereof, enters upon the land of another and cuts and carries off any timber or rails of the value of twenty-five dollars or more; or severs and carries off any outstanding crop of peanuts, potatoes, cane, or any other farm products except cotton and corn of the value of twenty-five dollars or more with intent to convert the same to his own use; and any person who knowingly, wilfully and without the consent of the owner thereof, enters into any dwelling house, store house, warehouse or other building or structure and cuts, breaks, tears out, removes any plumbing fixtures, lead pipe, copper, *Page 864 
lock, grate, mantel, light, fixture or other material which has been attached to and is a part of such building, the value of which was five dolars or more to the owner before being detached from such house or structure, with the intent to convert it to his own use, shall be guilty of grand larceny, and, on conviction, shall be imprisoned in the penitentiary for not less than one nor more than ten years."
"Theft of property in the second degree" is defined in §13A-8-4, Code of Alabama 1975:
 "(a) The theft of property which exceeds $100.00 in value but does not exceed $1,000.00 in value, and which is not taken from the person of another, constitutes theft of property in the second degree.
 "(b) Theft of property in the second degree is a Class C felony.
 "(c) The theft of a credit card or a debit card, regardless of its value, constitutes theft of property in the second degree.
 "(d) The theft of a firearm, rifle or shotgun, regardless of its value, constitutes theft of property in the second degree.
 "(e) The theft of property which exceeds $25.00 in value, and which is taken from or in a building where said property is sold or stored, constitutes theft of property in the second degree.
 "(f) The theft of any substance controlled by chapter 2 of Title 20 or any amendments thereto, regardless of value, constitutes theft of property in the second degree.
 "(g) The theft of any livestock which includes cattle, swine, horses, mules, asses or sheep, regardless of their value, constitutes theft of property in the second degree."
"Theft of property in the third degree" is defined in §13A-8-5, Code of Alabama 1975, as follows:
 "(a) The theft of property which does not exceed $100.00 in value and which is not taken from the person of another or the theft of property which does not exceed $25.00 in value if taken from or in a building where said property is sold or stored constitutes theft of property in the third degree.
 "(b) Theft of property in the third degree is a Class A misdemeanor."
The crime of grand larceny has now been encompassed under the classifications of theft. Deep v. State, 414 So.2d 141
(Ala.Cr.App. 1982). The grand larceny statute was repealed at the time of adoption of the new Criminal Code. The effective date of the new Criminal Code was postponed and it finally became effective January 1, 1980. Acts 1977, No. 607 may not have been in effect at the time of the Elmore County offense. The conviction in Elmore County was in 1983. As the statute of limitations for theft and for grand larceny is three years, §15-3-1, Code of Alabama (1975), the commission of the crime may or may not have occurred after January 1, 1980. The offense of theft now unifies several common law offenses including larceny. Ramsey v. State, 441 So.2d 1065 (Ala.Cr.App. 1983).
 "Larceny is defined in Alabama as (1) the felonious (and trespassory) taking and carrying away of (2) the personal property of another (3) with intent to convert it or deprive the owner of it. Livingston v. State, 44 Ala. App. 559, 216 So.2d 731 (1968), . . . ." Code of Alabama 1975, §§ 13A-8-2 through 13A-8-5 Commentary.
While the Elmore County Circuit Court listed the appellant's crime as grand larceny, it could as easily have charged him with theft. Section 13A-8-2 provides:
 "A person commits the crime of theft of property if he:
 "(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
 "(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." *Page 865 
During the colloquy preceding the sentencing in the burglary and grand larceny case, the following occurred:
 "Tell me what happened in this case. You see, I don't know any of the facts. Just tell me what happened.
 "DEFENDANT'S ANSWER: I broke into a house and took some things from it's these [sic] were a T.V., Stereo, and other item. I have returned these to the owner."
The appellant was sentenced to one year and one day for "grand larceny," with this sentence to run concurrently with his conviction of theft I in Montgomery County. As appellant's sentence was for more than one year, the conviction was a felony conviction and can be considered for purposes of the Habitual Felony Offender Act. Thompson v. State, [Ms. 84-304, Sept. 27, 1985] (Ala. 1985); Lidge v. State, 419 So.2d 610
(Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala. 1982).
The appellant contends that he cannot be convicted of both burglary and grand larceny and relies on Wilcox v. State,401 So.2d 789 (Ala.Cr.App.), aff'd, 401 So.2d 794 (Ala. 1981). InWilcox, the defendant was convicted of larceny and of buying, receiving, or concealing stolen property. This court held that a defendant could not be convicted of both of those two charges where the same property was involved. However, in this case, the appellant was convicted of two crimes different from those in Wilcox. The crime of burglary and the crime of grand larceny are not one and the same. The conviction or the adjudication of guilt of two crimes arising out of a common event or occurrence does not affect the separateness of the convictions. Jones v. State, 469 So.2d 713 (Ala.Cr.App. 1985). In Jones, the defendant pleaded guilty to separate cases of grand larceny and burglary. "At the sentence hearing, the defense counsel argued that the . . . offenses occurred on the same occasion. . . . The defendant was properly sentenced as a habitual offender even though several of his prior convictions were imposed on the same day and arose out of a common event or occurrence." 469 So.2d at 717.
Appellant also urges that his indictment charging burglary and grand larceny could result in only one sentence, citingWiggins v. State, 31 Ala. App. 50, 12 So.2d 756 (1943), as support. Wiggins does not support appellant's proposition. The court in Wiggins said that in a multiple-count indictment case with a single sentence, the court was authorized to refer the conviction to any one of the counts. Wiggins should not be read as restricting the sentencing to only one of the counts.
Section 15-3-8, Code of Alabama 1975, provides:
 "An act or omission declared criminal and punishable in different ways by different provisions of law shall be punished only under one of such provisions, and a conviction or acquittal under any one shall bar a prosecution for the same act or omission under any other provision."
This code section forbids double punishment, but it does not forbid double convictions. Yelton v. State, 56 Ala. App. 272,321 So.2d 234, cert. denied, 294 Ala. 745, 321 So.2d 237
(1975). If the same transaction supports convictions for both grand larceny and burglary, upon conviction, there can only be one punishment. Wade v. State, 42 Ala. App. 400, 166 So.2d 739
(1964); Gray v. State, 338 So.2d 444 (Ala.Cr.App.), cert. denied, 338 So.2d 445 (Ala. 1976). This rule mandating one punishment applies only where the evidence of the larceny is uncontradicted and standing alone supports the allegation of the prisoner's intent when he unlawfully entered onto the premises. Wildman v. State, 42 Ala. App. 357, 165 So.2d 396
(1963), cert. denied, 276 Ala. 708, 165 So.2d 403 (1964);Rutherford v. State, 49 Ala. App. 246, 270 So.2d 678, cert. denied, 289 Ala. 751, 270 So.2d 679 (1972). However, the Habitual Felony Offender Act refers to convictions, not to sentences. Watson v. State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). Although appellant here received, in essence, one sentence, for the prior Elmore County offenses, there were, nevertheless, two convictions. *Page 866 
Therefore, for the purpose of the application of the Habitual Felony Offender Act, both convictions were properly considered.
Appellant also asserts that his plea of guilty in the Elmore County cases was to either burglary or grand larceny but not to both. This claim is without merit. His plea of guilty was to burglary and to grand larceny. The plea was not phrased in the alternative. Further, from the record in that case we see that he answered affirmatively when asked if he understood that he was charged with burglary and grand larceny.
 V
The appellant asserts that his case was improperly severed from those of his co-defendants for purpose of trial. Originally, the cases were all consolidated. The appellant originally objected to this consolidation because his co-defendants made self-incriminating statements to the police. In its consolidation order, the trial court redacted the co-defendants' statements by marking over and omitting any statements involving the other co-defendants. The state then moved for severance on the grounds that the redacted statements prejudiced the state's case. The trial judge then ordered the severance of this appellant's case from the other co-defendants, while two of the three remained consolidated and were tried together. The fifth alleged perpetrator was never identified or apprehended.
Rule 15.4(d), Alabama Temporary Rules of Criminal Procedure, provides for severance in the following language:
 "(d) Severance grounds: If the court finds that by a joinder of defendants in an indictment, information, or complaint, or a joinder by order of court, as provided in this rule, a defendant or the state may be prejudiced to the extent that a fair trial cannot be afforded, the court shall order a severance of defendants or provide whatever other relief justice requires. However, without a finding of prejudice, the court may, with the agreement of all the parties, order a severance of defendants."
Once cases of two or more defendants have been consolidated for purpose of trial, the granting or denial of motions for severance rests in the discretion of the trial court. White v.State, 479 So.2d 1368 (Ala.Cr.App. 1985). "In making his decision as to whether a motion for severance should be granted, the trial judge should weigh the possibility of prejudice to the defendants against the public interest in judicial economy and efficiency." White, 479 So.2d at 1373. The appellant originally did not want consolidation; now he asserts that not to consolidate was unfair. In support of the state's motion for severance, the state listed its reason in part as follows:
 "4. The state submits that substantial prejudice to the State's cases against Defendants will result by utilization of the defendant's statement in the redacted form for the following reasons:
 "a) The State will be precluded from proving guilt under the complicity theory.
"b) The state will be precluded from introducing evidence which corroborates the victim's testimony.
 "c) The Court's order may preclude potential impeachment of a defendant who takes the stand."
The appellant has failed to show any abuse of discretion on behalf of the trial judge.
 VI
The appellant argues that the trial court erred when it removed from the jury's consideration a joint stipulation and admission by the prosecution and the defense. The stipulation was that two of the co-defendants had been charged with first degree rape and found guilty of second degree rape and that their facts were the same as appellant's. The appellant asserts that the trial court committed reversible error when it refused to allow the appellant to argue the prior convictions of the co-defendants. In admonishing the jury to disregard the previously received evidence, the trial judge stated:
 "I am going to tell you again that there has been testimony in this case that other companions or co-defendants *Page 867 
in this case were tried and found guilty of a lesser offense, and that one of them pleaded guilty to a lesser offense. In retrospect, I shouldn't have let it in. Although neither side objected to it, and I should not have done it then. But I am going to tell you to disregard it. Put it out of your mind. That was another trial and another jury, and that was a guilty plea, and those things just frankly have no bearing on whether or not the defendant in this case is guilty or innocent of any of these charges in this case."
The appellant argues that, since counsel admitted the statements, they are binding on the court. The trial court later decided that the evidence of the earlier convictions and sentences of the co-defendants was not relevant, although not objected to. Therefore, the court "cured" the illegality in the only way possible, by instructing the jury. We have held that when inadmissible evidence has been received into evidence, the court can "cure" such error by withdrawing it from the evidence and instructing the jury to disregard it. Simas v. State,410 So.2d 139 (Ala.Cr.App. 1981); Pelham v. State, 23 Ala. App. 359,125 So. 688 (1930). For the court to strive to purge the record of error is commendable and to be encouraged. In this case, the trial judge effectively removed the evidence from the jury's consideration.
 VII
The appellant argues that the court erred when instructing the jury as to reasonable doubt. In his instructions, the trial judge stated:
 "The doubt in this case which would justify an acquittal — that is, a finding of not guilty — must be an actual and a substantial doubt, and not just a mere possible doubt. A reasonable doubt is not a guess or surmise, it's not a capricious doubt, and not just a mere possible doubt."
Appellant admits that the trial court's oral charge concerning "reasonable doubt" is supported by case law and has been approved by the Alabama Pattern Jury Instructions. Therefore, we find no error on behalf of the trial court with regard to its instructions.
 VIII
Appellant's final contention is that the state's cross-examination of the co-defendants was a violation of their privilege against self-incrimination and that this misconduct in turn prejudiced him. This argument is meritless on its face. All evidence adduced by the state in proving a criminal case is prejudicial to the defendant. The appellant does not have standing to raise this issue. See, Miles v. State,476 So.2d 1228 (Ala.Cr.App. 1985), applying the rule stated in McGowan v.Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), that "a litigant may only assert his own constitutional rights or immunities." As Judge Patterson has stated, "Appellate courts will not pass upon a constitutional question unless some specific right of the appellant is directly involved. . . . "State v. Woodruff, 460 So.2d 325, 328 (Ala.Cr.App. 1984).
For the reasons set out above, the judgment of the trial court is due to be affirmed.
AFFIRMED. All the Judges concur, except BOWEN, P.J., who concurs in result only.